O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YONGDA HUANG HARRIS,<br><br>    Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case Nos. 2:16-CV-06169-CAS<br>     2:16-CV-05606-CAS<br>     2:12-CR-01085-CAS<br><br>**ORDER**<br><br>PETITIONER'S MOTIONS FOR RETURN OF PROPERTY (Case No. 2:16-CV-6169-CAS, Dkt. 1, filed August 15, 2016); (Case No. 2:16-CV-5606-CAS, Dkt. 46, filed May 13, 2019); (Case No. 2:12-CR-01085-CAS, Dkt. 192, filed May 13, 2019)<br><br>PETITIONER'S MOTION FOR REIMBURSEMENT OF ALL ATTORNEYS' FEES (Case No. 2:16-CV-6169-CAS, Dkt. 22, filed December 20, 2018)<br><br>PETITIONER'S MOTION FOR COURT TO ORDER THE RETURN OF ALL MONIES RELATED TO CONVICTION AND DESTRUCTION OF ALL |

| | |
|---|---|
| | ) EVIDENCE SEIZED BY THE |
| | ) GOVERNMENT (Case No. 2:16-CV- |
| | ) 6169-CAS, Dkt. 23, filed December 20, |
| | ) 2018) |
| | ) |
| | ) MOTION TO ORDER BOSTON |
| | ) FEDERAL DISTRICT COURT ET AL. |
| | ) TO EXPUNGE DEFENDANT'S |
| | ) CONVICTION (2:12-CR-01085-CAS, |
| | ) Dkt. 190, filed May 13, 2019) |

## I. INTRODUCTION

On October 5, 2012, petitioner Yongda Huang Harris was arrested at Los Angeles International Airport ("LAX") by a United States Customs and Border Protection ("CBP") agent for willfully delivering hazardous material to an air carrier in violation of 49 U.S.C. § 46502(a)(1)(B). Case No. 2:16-CV-5606-CAS, Dkt. 31 ("Habeas Order") at 2. Pursuant to his arrest, and in connection with the charges it planned to bring against Harris, the government seized Harris's luggage (the "property"). Id. at 3. On November 8, 2012, a grand jury indicted Harris for "knowingly and willfully making material false, fictitious, and fraudulent statements on a customs declaration form" in violation of 18 U.S.C. § 1001. Case No. 12-CR-01085, Dkt. 18 ("Indictment"). Harris pled guilty on December 17, 2012. Id., Dkt. 28.

On June 10, 2013, Harris appealed, challenging both his conviction and his sentence. Case No. 12-CR-01085, Dkt. 86. The Ninth Circuit affirmed both the conviction and the sentence on August 5, 2015. See United States v. Harris, 611 Fed. Appx. 480, 481 (9th Cir. 2015).

On July 27, 2016, Harris filed a motion to vacate his sentence under 18 U.S.C. § 2255. Case No. 16-CV-05606, Dkt. 1. On August 15, 2016, Harris filed a new case seeking the return of his property. Case No. 16-CV-06169, Dkt. 1 ("Prop. Mot."). On October 14, 2016, the Court consolidated the cases and stayed proceedings relating to the

-2-

1  motion for return of property. Case No. 16-CV-06169, Dkt. 7; Case No. 16-CV-05606,
2  Dkt. 11.  The Court granted Harris's petition for relief on August 9, 2017, Case No. 16-
3  CV-5606, Dkt. 31, and subsequently granted the government's application to dismiss the
4  indictment against Harris, Case No. 12-CR-1085, Dkt. 183.
5        On October 24, 2018, the Court issued a minute order setting a briefing schedule
6  on Harris's motion for return of property.  Case No. 16-CV-06169, Dkt. 14.  On
7  November 26, 2018, the government filed its opposition.  Id. Dkt. 15 ("Opp'n").  On
8  December 20, 2018, Harris filed: (1) a reply to the opposition, id.; (2) a motion for
9  reimbursement of all attorneys' fees under 18 U.S.C. § 3306, id., dkt. 23 ("Atty. Fees
10 Mot."); (3) a motion for "the Court to order return of all monies taken from petitioner as a
11 consequence of his 18 U.S.C. § 1001 conviction and return or destruction of all evidence
12 the government has pursuant to a recent seizure of alleged confidential communications,"
13 id., dkt. 23 ("Seizure Mot.").
14       On January 18, 2019, the government filed a supplemental brief addressing the
15 latter two motions.  Id. Dkt. 25 ("Supp. Brief").  On May 13, 2019, Harris filed two
16 additional motions regarding the return of his property, Case No. 2:16-CV-5606-CAS,
17 Dkt. 46; Case No. 2:12-CR-01085-CAS, Dkt. 192, and a motion to "order Boston Federal
18 Court, U.S. District Court, Boston Federal Probation, U.S. Probation and Pretrial
19 Services, FBI, Dept. of Justice, US Bureau of Prisons, and all other relevant agencies to
20 expunge all criminal records and conviction of defendant," Case No. 2:12-CR-01085-
21 CAS, Dkt. 190 ("Exp. Mot.").
22       On June 3, 2019, the Court requested an *in camera* submission from the
23 government explaining with more specificity the reasons why it still required possession
24 of Harris's property. No. 16-CV-06169, Dkt. 26 ("Prop. Order").  The government
25 submitted its *in camera* brief on July 10, 2019.  Case No. 2:16-CV-06169-CAS, Dkt. 35.
26       On June 17, 2019, Harris filed (1) a motion "objecting to the Court's order for an
27 in camera proceeding and for the Court to order the government to reveal its criminal
28 charges and investigation" against Harris, Case No. 2:16-CV-06169-CAS, Dkt. 30; and

(2) a motion for "ex-parte status for exhibit 1 and a motion for the court to order email correspondence for all future communications between court and plaintiff," Case No. 2:16-CV-06169-CAS, Dkt. 29. Harris withdrew these two motions on July 22, 2019. Id., Dkts. 37, 38.

## II. BACKGROUND

On October 5, 2012, Harris arrived at LAX on a flight from Japan. Habeas Order at 2. A CBP agent requested a secondary screening of Harris and his luggage because Harris appeared to be wearing body armor under a trench coat. Id. Upon inspecting Harris's luggage, the agent found various weapons including a smoke grenade, lead-filled billy clubs, a baton, a bone saw, a hatchet, and an ice pick. Id. at 2. Customs agents also found two body bags, a gas mask, a fully-body biohazard suit, three black full-face ski masks, several different types of gloves, a blindfold, a white S&M style mask with zippers over the eyes and mouth, a false beard and adhesive, binoculars, knives, metal handcuffs, a small digital video recorder, a pair of wire cutters, three pairs of scissors, and an electronic device to repel dogs. Id.

Agents also searched Harris's laptop and found Japanese anime graphically depicting the rape, molestation, and sexual torture of children and a live action movie titled "Girls in Cement" containing footage of the kidnapping, gang rape, mutilation, sexual torture, and murder of girls. Id. at 3. They also found publications that provided instructions on how to "hunt and trap humans," information regarding Rohypnol and other date-rape drugs, cover letters to various schools in Japan seeking employment, a document containing the schedules for schools in Japan noting the times at which children arrived and left each school, and a list of vacant plots of land in proximity to those schools. Id.

Based on their belief that the smoke grenade in Harris's checked luggage was likely hazardous, agents arrested Harris on charges of willfully delivering hazardous material to an air carrier in violation of 49 U.S.C. § 46502(a)(1)(B). Id.

On November 8, 2012, a grand jury indicted Harris for "knowingly and willfully

[making] material false, fictitious, and fraudulent statements on a customs declaration form" in violation of 18 U.S.C. § 1001. Id. Specifically, the indictment charged that petitioner falsely identified China as the only country that he had visited on this trip prior to arrival in the United States and that he falsely represented the "total value of all goods purchased or acquired abroad" to be only $100. Id. On December 10, 2010, Harris signed a plea agreement which stated that he knowingly and willfully made the false statements to CBP, pursuant to which the government agreed to recommend that Harris be sentenced to five years of probation. Id. at 4. On August 9, 2017, the Court overturned Harris's conviction and vacated his sentence because Harris's attorneys did not properly advise him or the elements of the crime to which he admitted. Id. at 19.

### III.  MOTION FOR RETURN OF PROPERTY

Harris seeks the return of the property that was seized from him at LAX, arguing that the government's seizure of his property and refusal to return it to him is unlawful and constitutes a "violation of his and his family's constitutional rights," because (1) the property belonged to his mother and "other people," and (2) he was coerced into signing the plea deal, so he did not "waive his right to the property" by signing it. Prop. Mot. at 1. The government argues that it has the right to keep Harris's property because it was obtained pursuant to a lawful arrest and because "the seized items are important evidence to the potential new charges it is investigating" against Harris. Opp'n at 5. The government's *in camera* brief details the new charges it is investigating against Harris and the reasons why the seized property is relevant to those charges.

Rule 41(g) of the Federal Rules of Criminal Procedure provides that "[a] person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property." United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir.1987) (citations omitted). But when "the property in question is no longer needed for

evidentiary purposes, either because trial is complete, the defendant has pleaded guilty, or . . . the government has abandoned its investigation," a defendant "is presumed to have a right to [the property's] return[.]" Id. At this point, "the government has the burden of demonstrating that it has a legitimate reason to retain the property." Id.; see also United States v. Gladding, 775 F.3d 1149, 1152 (9th Cir. 2014).

The Court is satisfied by the government's representations in its *in camera* brief that the seized property is relevant to its ongoing investigation of potential new charges against Harris. Accordingly, the Court **DENIES** Harris's motions for return of his property.

## IV. MOTION FOR REIMBURSEMENT OF ALL ATTORNEYS' FEES

Harris seeks the reimbursement of attorneys' fees pursuant to the Hyde Amendment, 18 U.S.C. § 3306. Atty. Fees Mot. at 1. Harris contends that the government's "vile and deplorable" conduct rendered it liable for Harris's attorneys' fees under the Hyde Amendment. Id. at 3–4. Specifically, Harris argues that the government conducted an "illegal prosecution" by "inventing a fictitious charge" to justify his arrest and that his own attorneys provided an "ineffective defense." Id. at 3.

The Hyde Amendment permits a prevailing party in a criminal case to be awarded attorneys' fees "where the court 'finds that the position of the United States was vexatious, frivolous, or in bad faith.'" United States v. Pocklington, 831 F.3d 1186, 1187 (9th Cir. 2016) (citation omitted). "[T]he burden is on the defendant in the underlying case to prove that the Government's position was vexatious, frivolous, or in bad faith." U.S. v. Manchester Farming Partnership, 315 F.3d 1176, 1182 (9th Cir. 2003).

"'Vexatious' has both a subjective and objective element: subjectively, the Government must have acted maliciously or with an intent to harass Appellants; objectively, the suit must be deficient or without merit." Id. "'[B]ad faith'… is not simply bad judgment or negligence, but [] implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . [and] a state of mind affirmatively operating with furtive design or ill will." Id. at 1185 (citations omitted).

The Court finds that Harris has failed to meet his burden of demonstrating that the government's position was vexatious, frivolous, or in bad faith.  To convict a defendant under 18 U.S.C. § 1001, the government must show (1) that defendant made a false statement to CBP; (2) that defendant acted deliberately and with knowledge that the statement was untrue; and (3) the statement was "capable of influencing CBP's decisions or activities."  Here, Harris stated on his customs form that China was the only country he had visited on his trip prior to arrival in the United States and that the "total value of all goods purchased or acquired abroad" was only $100, when, in fact, he had actually visited Japan for approximately 14 days prior to his arrival in the United States and had purchased more than $100 in goods.  Habeas Order at 3–4.  Harris was also indicted by a grand jury that agreed enough evidence existed to pursue this case on the merits.  In light of the foregoing, the Court finds that the government's case was not "foreclosed by binding precedent or so obviously wrong as to be frivolous."  United States v. Gilbert, 198 F.3d 1293, 1304 (11th Cir. 1999).  Furthermore, Harris has failed to put forth any evidence suggesting that the government acted maliciously or with an intent to harass him.

Accordingly, the Court **DENIES** Harris's motion for attorneys' fees pursuant to the Hyde Amendment.  The Court also declines Harris's request for a hearing on this matter.

## V. MOTION FOR COURT TO ORDER THE RETURN OF ALL MONIES RELATED TO CONVICTION

Harris contends that the government should "order the Government to return all funds taken from him as a result of his criminal conviction."  Seizure Mot. at 2.  This motion was filed in his action seeking the return of his property pursuant to Federal Rule of Criminal Procedure 41(g).  Specifically, Harris seeks $350 in special assessments and penalties and approximately $3,000 in ankle monitor expenses.  Id.  The government contends that Harris cannot recover money damages under Rule 41(g), and that his request should be denied.  Supp. Opp'n at 3–4.

"[A]n award of money damages against the government under Rule 41(g) is barred by sovereign immunity." Ordonez v. United States, 680 F. 3d 1135, 1140 (9th Cir. 2012). "The Rule … provides only for the 'return [of] the property to the movant,' nothing more." Id. at 1139 (citing Fed. R. Crim. P. 41(g)). The Court therefore **DENIES** Harris's request for the return of funds from the government.

## VI. MOTION FOR THE COURT TO ORDER THE DESTRUCTION OF ALL ATTORNEY-CLIENT CONFIDENTIAL DOCUMENTS SEIZED BY THE GOVERNMENT AND U.S. PROBATION

Harris represents that he sent "attorney client documents and communications" to a man named David Floyd who had falsely represented that he was a paralegal. Seizure Mot. at 2. These documents and communications were allegedly seized by probation officers in Boston upon David Floyd's arrest. Id. Along with his request for damages associated with his conviction, Harris asks the court to order the destruction of all "attorney privileged information shared by Petitioner with Mr. Floyd and subsequently seized by the Government." Id.

The probation officers that Harris names in his motion are residents of Massachusetts and the events that Harris describes took place in Massachusetts. Accordingly, the Court lacks personal jurisdiction over the probation officers and cannot compel them to return or destroy the evidence that they seized. The Court therefore **DENIES** Harris's motion to order the destruction of any evidence seized by the government in Massachusetts.

## VII. MOTION FOR EXPUNGEMENT OF ALL CRIMINAL RECORDS

Harris contends that, despite his conviction having been overturned by this Court, a background check performed in January 2019 indicated that there is an ongoing criminal case in this matter. Exp. Mot. at 2. Harris seeks an order from this Court requiring the FBI "to immediately expunge their databases of this factual inaccuracy in order to ensure Defendant can satisfactorily pass all FBI criminal background checks." Id. Harris also requests that this Court "issue a formal written order that states as a matter of fact that

Defendant does not have a criminal record, his criminal charge was vacated, and he is fully exonerated under the law," and that this order "be transmitted to US Probation & Pretrial Services, Boston Federal Probation Department, Boston Federal Court, and the US Attorney's Office to expunge the Massachusetts State criminal court background check system." Id. at 4.

The Court has reviewed the January 2019 FBI background check which defendant has produced. That report states that defendant was arrested in El Segundo, California on October 6, 2012, however there is no charge associated with that arrest. Dkt. 190-1 ("Crim. Record") at 11. The report also states that defendant was arrested on September 26, 2013 in Boston, Massachusetts, and charged with a violation of his probation. Id. at 13. The probation violation was entered by the United States District Court for the District of Massachusetts, the honorable F. Dennis Saylor IV presiding. See United States v. Harris, 1:13-cr-10228-FDS, Dkt. 53. Defendant requests this Court to expunge the records of his arrests and probation violation. Exp. Mot. at 2.

The Court lacks authority to "expunge" the September 26, 2013 charge, and to compel the United States District Court for the District of Massachusetts to vacate the charge. "A district court lacks authority to issue a writ of mandamus to another district court." Mullis v. U.S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1393 (9th Cir. 1987) (citing Lewis v. Green, 629 F.Supp. 546, 553 (D.D.C. 1986)); see also Wiley v. Wilkins, 134 F. Supp. 3d 308, 309 (D.D.C. 2015), aff'd, 671 F. App'x 807 (D.C. Cir. 2016) ("A federal district court lacks subject matter jurisdiction to review the decisions made by another district court judge.") (citing 28 U.S.C. §§ 1331, 1332, general jurisdictional provisions).

Defendant also fails to demonstrate that the Court can compel the FBI to alter its records. Congress has directed executive agencies to maintain particular records, and the Court has no authority to expunge a valid arrest. United States v. Davis, No. CR 05-00757 DDP, 2014 WL 935355, at *3 (C.D. Cal. Mar. 10, 2014) (citing 28 U.S.C. § 534(a)(1) (1994) ("The Attorney General shall acquire, collect, classify and preserve

identification, criminal identification, crime, and other records")); Fernandez v. F.B.I., No. CIV.A. 87-1461, 1988 WL 58923, at *1 (D.D.C. May 26, 1988) ("The F.B.I. is a custodian of records in this case. It has no duty to delete otherwise accurate information from its files.") (internal quotations and citations omitted). Here, defendant fails to demonstrate that his arrests were unlawful or otherwise invalid. Accordingly, defendant's motion for expungement is **DENIED**.

### VIII. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Harris's motions for the return of his property.

The Court **DENIES** Harris's motion for reimbursement of attorneys' fees.

The Court **DENIES** Harris's motion for the Court to order the return of all monies related to his conviction.

The Court **DENIES** Harris's motion for the Court to order the return of and destruction of all evidence seized by the government.

The Court **DENIES** Harris's motion for expungement of his criminal records.

**IT IS SO ORDERED.**

DATED: August 14, 2019

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE